# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | 1:09-CR-0179 |
| v. | : | |
| JAMAL ANTHONY | : | J. Rambo |

## MEMORANDUM

Before the court is Defendant Jamal Anthony's motion to suppress. (Doc. 67.) A hearing was held on February 26, 2010, at which time evidence was presented regarding the process by which police identified Anthony as the individual who sold narcotics to an undercover agent. Prior to this hearing, the motion had been briefed, (Docs. 68, 74), and it is now ripe for disposition. For the reasons that follow, the motion will be denied.

**I.** **Background**

  **A. Facts**

From January through May of 2009, law enforcement officials were investigating drug sales made by an individual named Brandon Wallace, co-defendant of Anthony. On April 2, 2009, Detective Corey Dickerson, with the Dauphin County Criminal Investigation Division, made arrangements with Wallace to purchase crack-cocaine. Wallace told Detective Dickerson that he would send someone named "Mal" to meet Dickerson at the Uptown Plaza shopping center in

Harrisburg, Pennsylvania. Wallace told Dickerson that Mal would be driving a white Hyundai Sonata.

When Dickerson arrived at the shopping plaza a Hispanic man approached his car, Dickerson told other law enforcement officers who were conducting surveillance that he thought the individual approaching was "Mal." The man than identified himself as Mal and got into Dickerson's car. Dickerson was aware that he would need to be able to properly identify Mal, and took mental notes of Mal's clothing, including his distinct earring, and facial features, such as a chipped front tooth. The two went for a short drive, during which Defendant sold Dickerson fifteen grams of crack-cocaine for $600. Dickerson then dropped Defendant back at the parking lot. Video surveillance shows Defendant loitering nearby for some time, and then getting into a white Hyundai Sonata. Video surveillance caught the tag of the Hyundai Sonata, and Detective Paul was able to read some of the numbers. However, the video was not clear and Paul was not able to definitively discern all the numbers. After running a series of possible combinations, the tags finally came back to a white Hyundai Sonanta registered in Defendant's mother's name with the address where Defendant lived.

Detective Dickerson wrote an undercover report immediately after the narcotics buy and before talking with any other law enforcement. The report detailed Defendant's physical description.

When Wallace first mentioned that he would not be the one actually conducting the buy, but would instead send "Mal," Detective Jason Paul, with the Harrisburg Police Department, contacted a confidential informant and asked who

Wallace's friend "Mal" was. The informant told Detective Paul two possible names, one of which was Jamal Anthony.

After the buy, Detective Paul pulled Jamal Anthony's driver license photograph and showed it to Detective Dickerson. Detective Dickerson said that this was the individual who had sold him narcotics. It was a clear and sunny day, the parking lot was empty, and when Dickerson later saw a picture of Defendant he was "100% certain" it was the same individual who sold him crack-cocaine. Dickerson also viewed the video surveillance and identified Defendant.

### B. Procedural History

On June 3, 2009, a grand jury issued an indictment against Defendant and Brandon Wallace alleging they were selling, distributing, or dispensing a controlled substance and conspiracy to do the same. (Doc. 1.) On January 22, 2010, Defendant filed the instant motion to suppress and brief in support, (Docs. 67, 68), claiming that the license photo of Defendant which was shown to Detective Dickerson impermissibly tainted Dickerson's ability to properly identify Defendant. On February 20, 2010, the government filed their brief in opposition, (Doc. 74), and on February 26, 2010, a hearing was held before the court.

### II. Discussion

Defendant argues that Detective Paul showing Detective Dickerson Defendant's license photo created an unnecessarily suggestive identification, which was subject to misidentification, and therefore violated Defendant's Due Process rights. The government responds that the photograph was not unduly suggestive and that Detective Dickerson's identification was reliable. For the reasons that

follow, the court agrees that Dickerson's identification did not violate Defendant's Due Process rights.

Identification procedures used by the government may violate a Defendant's Due Process rights if they are "unnecessarily suggestive and create[] a substantial risk of misidentification." *United States v. Emanuele*, 51 F.3d 1123, 1128 (3d Cir. 1995) (quoting *Government of Virgin Islands v. Riley*, 973 F.2d 225 (3d Cir. 1992)) (internal citations omitted). However, "[a] suggestive and unnecessary identification procedure does not violate due process so long as the identification possesses sufficient aspects of reliability. . . ." *Id.* Reliability is determined using a totality of the circumstances approach. *Id.* Factors which may be relevant include- "the witness' original opportunity to observe a defendant and the degree of attention during that observation; the accuracy of the initial description; the witness' degree of certainty when viewing a defendant or his image; and the length of time between the crime and the identification procedure." *Id.*

With these factors in mind, the evidence indicates that the photograph shown to Detective Dickerson was not unduly suggestive and did not create a substantial risk for misidentification. Although Dickerson was not in the presence of Defendant for long, he was aware that he would need to be able to identify Defendant at a later time. His degree of attention to the identification of Defendant was therefore higher than the standard day-to-day interaction between strangers. In addition, Dickerson was accurate in his initial identification. Noting in his report the chipped tooth and distinctive clothing. Dickerson also exclaimed that he was "100% certain" that the individual in the photograph was the same individual who had sold him narcotics. In light of all this, the court finds that Detective Dickerson's

identification of Defendant was reliable, the photograph was not "unnecessarily suggestive," and did not create a "substantial risk for misidentification." *Emanuele*, 51 F.3d at 1128.

**III.     Conclusion**

Defendant's Due Process rights were not violated because Detective Dickerson's identification was reliable, and the photograph was not unduly suggestive thereby risking misidentification. As such, the motion will be denied. An appropriate order to issue.

                                                                 S/SYLVIA H. RAMBO
                                                                 United States District Judge

Dated: March 2, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **1:09-CR–0179** |
| **v.** | : | |
| **JAMAL ANTHONY** | : | **J. Rambo** |

## ORDER

In accordance with the accompanying memorandum of law, Defendant's motion to suppress, (Doc. 67), is **DENIED**.

This case is scheduled for jury selection on April 5, 2010, at 9:30am in Courtroom 3.

S/SYLVIA H. RAMBO
United States District Judge

Dated: March 2, 2010.