# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CASE NO. 1:09-CR–0179 |
| v. | : | |
| JAMAL ANTHONY | : | J. Rambo |

## M E M O R A N D U M

Before the court is Defendant Jamal Anthony's motion for a new trial. (Doc. 125.) For the reasons that follow, the motion will be denied.

**I.      Background**

On June 16, 2010 and June 17, 2010, the following facts were presented to a jury:

On April 2, 2009, Officer Levell Jenkins, of the Harrisburg Police Department and member of the Dauphin County Vice Squad, was conducting an undercover surveillance operation in the City of Harrisburg. (Tr. of Proc., at 44, 46.) Prior to any surveillance being conducted, Officer Jenkins met with Detective Corey Dickerson of the Dauphin County Criminal Investigation Unit. (*Id.* at 46.) Officer Jenkins was thus familiar with both Detective Dickerson, who would be participating in an undercover narcotics purchase, and the vehicle Detective Dickerson would be driving. (*Id.* at 47.)

Later that same day, law enforcement officials proceeded to Uptown Plaza in Harrisburg, where Officer Jenkins had a hand-held camera to record the

potential narcotics sale and was in communication with other officers. (*Id.* at 47.) Officer Jenkins began recording the scene, eventually focusing in on an individual wearing a hooded jacket who proceeded to approach and then enter the car driven by undercover Detective Dickerson. (*Id.* at 47, 48.) At this point, Detective Dickerson and the individual left the area. (*Id.* at 48.)

Early that same day, Anthony's co-defendant in this case, Brandon Wallace, had agreed to sell undercover Detective Dickerson a half ounce of crack-cocaine. (*Id.* at 62.) Although Wallace was on his way out of town, he agreed to make the sale and it was determined they would meet at the Uptown Plaza. (*Id.* at 62, 63.) However, while en route, Wallace encountered Anthony, who he knew as "Mal." (*Id.* at 63.) Wallace asked him "if he wanted to make a few dollars" and deliver the drugs for Wallace.[1] (*Id.*) Anthony agreed to make the sell for Wallace, and Wallace in-turn informed Detective Dickerson that he would be sending an individual named "Mal" who would be arriving in a white Sonata and that he would know what Detective Dickerson was driving, this was all agreed to by Detective Dickerson. (*Id.*)

Shortly after Detective Dickerson arrived at the buy location, an individual wearing a blue hooded sweatshirt and jeans approached the vehicle and got in the passenger side door. (*Id.* at 104.) At this point, Detective Dickerson made a mental note of the individuals facial features including that he had an earring, a chipped tooth, and was a medium to light skinned male, who identified himself as

---

[1] Wallace, in court, identified "Mal" as Jamal Anthony. They had grown up together and have known each other for approximately seventeen years and indicated that Anthony has a distinct front chipped tooth. (*Id.* at, 66, 67.) Wallace also indicated that when he had sold Anthony drugs in the past, Anthony had been driving a white Hyundai Sonata. (*Id.* at 69.)

2

"Mal." (*Id.*) Detective Dickerson and Anthony then drove out of the parking lot before conducting the narcotics transaction, once out of the lot, Detective Dickerson gave Anthony six-hundred dollars for fifteen grams of crack-cocaine. (*Id.* at 105.)

At the time of the actual transaction, law enforcement were not yet aware of Jamal Anthony's real name. (*Id.* at 106.) To help establish his identity, Detective Dickerson gave other law enforcement officials his description and Anthony was later seen entering a white Kia.[2] (*Id.* at 106, 133.) At that exact time, law enforcement was unable to get a read on the white vehicle's license plate, however, further investigation of the video footage at a later date, albeit with some difficulty, showed similar tags which came back to a white Kia owned by Anthony's mother and registered at 812 North 18th Street, Harrisburg, Pennsylvania, 17103. (*Id.* at 140-41.) In addition, immediately after the buy Detective Dickerson was shown a video of Jamal Anthony in the area of the drug transaction, and Dickerson was able to positively identify this as the individual, "Mal," who had sold him drugs. (*Id.* at 106.) Furthermore, shortly after this identification, Detective Dickerson wrote a summary report of the incident detailing the physical appearance of the person who had purchased drugs from, and how much of the controlled substance he bought. (*Id.* at 107.)

A few hours after the transaction, Detective Jason Paul with the Harrisburg City Police Department, who was the lead detective assigned to the case, contacted Detective Dickerson and asked him to view a photo of an individual, it was a driver's license photo, however, all identifying information was blocked. (*Id.* at

---

[2] Apparently Wallace may have been confused by the make and/or model of the vehicle Anthony normally drove, or this was a difference vehicle then he had previously been seen driving.

108.) Detective Dickerson identified the individual as Mal, and was "a hundred percent sure that Mr. Anthony, [Mal], sold [him] crack cocaine on April 2nd." (*Id.*) The license picture belonged to the defendant, Jamal Dion Anthony, with a residence of 812 North 18th Steet, Harrisburg, Pennsylvania, 17103. (*Id.*)

After the completion of all evidence, the jury found Jamal Anthony guilty of conspiracy to distribute and distribution of five grams or more of cocaine base in violation of 21 U.S.C. §§ 841 and 846. (*Id.* 241-42.)

**II.** **Standard of Review**

A motion for a new trial is governed by Federal Rule of Civil Procedure 59. Under this rule, in the case of a jury trial, "[t]he court may, on motion, grant a new trial on all or some of the issues—and to any party— . . . for any reason for which a new trial has been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). In the Third Circuit, a new trial is warranted "when the verdict is against the great weight of the evidence or errors at trial produce a result inconsistent with substantial justice." *Sandrow v. United States*, 832 F. Supp. 918, 918 (E.D. Pa. 1993) (citing *Roebuck v. Drexel Univ.*, 852 F.2d 715, 735-36 (3d Cir. 1988)); *see also Bullen v. Chaffinch*, 336 F. Supp. 2d 342, 346 (D. Del. 2004) (noting that excessive damages or improper use of peremptory challenges to exclude potential jurors on the basis of race are other grounds for a new trial).

When a motion for a new trial is based on a prejudicial error of law, the court has broad discretion to order a new trial. *Klein v. Hollings*, 992 F.2d 1285, 1289-90 (3d Cir. 1993). If, however, a motion for a new trial is premised on a verdict that is allegedly against the weight of the evidence, the court's discretion is

4

more limited. *Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991). Under these circumstances, a new trial should only be granted when the verdict "cries out to be overturned or shocks the conscience." *Id.* Nonetheless, in reviewing a motion for a new trial, the court must draw all reasonable inferences in favor of the verdict winner. *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984); *see also* 12 James Wm. Moore et al., Moore's Federal Practice § 59.13.

**III.     Discussion**

Anthony argues that the eyewitness identification of him was so against the weight of the evidence that no reasonable jury could find him guilty as a matter of law. In addition, Anthony claims the weight of the evidence was against his conspiracy charge, as this was based entirely on the testimony of Brandon Wallace which was wholly unreliable. For the reasons that follow, the court cannot conclude that the verdict was so against the weight of the evidence that no reasonable jury could have come to the conclusion reached by this jury.

**A.     Identification**

Generally speaking, issues of eyewitness identification are credibility issues to be determined by the jury. *See United States v. Crudup*, 2005 WL 1324861, at *1 (M.D. Pa. 2005). In the instant case, the court does not agree that the evidence failed to show that Jamal Anthony was in fact the individual who sold drugs to Detective Dickerson.

Anthony was identified by Officer Jenkins on videotape and in person. He was identified by Brandon Wallace, a friend of his family who had known him approximately seventeen years.

5

Furthermore, he was identified by Detective Dickerson at close range, and such identification was later confirmed by photograph. Although Dickerson was not in the presence of Defendant for long, he was aware that he would need to be able to identify Defendant at a later time. His degree of attention to the identification of Defendant was therefore higher than the standard day-to-day interaction between strangers. In addition, Dickerson was accurate in his initial identification: Noting in his report the chipped tooth and distinctive clothing. Dickerson also exclaimed that he was "a hundred percent certain" that the individual in the photograph was the same individual who had sold him narcotics. In light of all this, the court finds that Detective Dickerson's identification of Defendant was reliable.

Finally, the jury was able to see the video footage of the narcotics transaction, was able to see the photographs supplied to Detective Dickerson by Detective Paul, and was able to see Anthony in court. It was for a jury to conclude whether the individual seen in the footage, the photographs and in court was the same individual, and the fact that they came to such a conclusion is not so against the weight of the evidence that it "shocks the conscience." *Williamson*, *supra.* As such, Anthony's motion will be denied as to his distribution claim.

### B.     **Testimony of Brandon Wallace**

Defendant next argues that the testimony of Brandon Wallace was not reliable because Wallace has previously been convicted of serious criminal activity and because his testimony against Anthony could potentially reduce his sentence as a co-defendant in this case.

All of this evidence was presented and argued to a jury, and it was for the jury to determine credibility issues. In addition, Wallace's testimony was

corroborated by Detective Dickerson.  It was for a jury to determine whether Wallace was testifying for personal gain and whether Detective Dickerson was somehow mistaken or untruthful in testifying that he was told by Wallace his acquaintance, "Mal," would be delivering the narcotics.  The jury was instructed on the weight to give the testimony of co-conpirators and witnesses with prior criminal histories, and it was for the jury to determine the credibility to be given to such a witness.  Therefore, the court cannot conclude that the verdict was so against the weight of the evidence that it "shocks the conscience." *Williamson, supra*.  As such, Anthony's motion will be denied as to his conspiracy claim.

## IV.     Conclusion

For the aforementioned reasons, the court cannot conclude that the verdict in this case was so against the weight of the evidence as to warrant a new trial and Defendant's motion will be denied.  An appropriate order will issue.


                                                                    s/Sylvia H. Rambo
                                                                    United States District Judge

Dated:  December 8, 2010.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CASE NO. 1:09-CR–0179** |
| **v.** | : | |
| **JAMAL ANTHONY** | : | **J. Rambo** |

## O R D E R

**AND NOW**, in accordance with the accompanying memorandum of law, **IT IS HEREBY ORDERED THAT** Defendant's motion for new trial, (doc. 125), is **DENIED**. The United States Probation Office shall prepare the presentence report.

                                                s/Sylvia H. Rambo
                                                United States District Judge

Dated: December 8, 2010.